UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LEONARD RAY SMITH** | \* | **CIVIL ACTION NO. 11-0531** |
| **VERSUS** | \* | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | \* | **MAG. JUDGE KAREN L. HAYES** |

### REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Leonard R. Smith protectively filed the instant application for Title XVI Supplemental Security Income payments on November 20, 2007. (Tr. 93, 62-65). He alleged disability as of December 6, 2007, because of a heart attack. (Tr. 71, 75).[1] The claim was denied at the initial stage of the administrative process. (Tr. 15-16, 30-33). Thereafter, Smith requested and received a December 17, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 8-14). However, in a May 13, 2009, written decision, the ALJ determined that Smith was not disabled under the Act, finding at step four of the sequential evaluation process that he was able to return

---

[1] A prior claim was denied at the administrative hearing level on September 15, 1998. (Tr. 72).

to his past relevant work as a janitor/housekeeper. (Tr. 17-29). Smith appealed the adverse decision to the Appeals Council. On July 30, 2010, however, the Appeals Council denied Smith's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

On April 4, 2011, Smith sought review before this court.[2] He alleges the following errors:

(1) the Appeals Council erred by failing to remand the matter to the ALJ for consideration of newly submitted evidence;

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(3) the ALJ did not ensure that plaintiff knowingly and intelligently waived his right to counsel, thereby depriving plaintiff of a full and fair hearing, with resulting prejudice.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a

---

[2] The Appeals Council extended Smith's time to file suit until 60 days after receipt of its February 24, 2011, letter. (Tr. 1).

preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite

>
> duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Smith had not engaged in substantial gainful activity during the relevant period. (Tr. 22). At step two, he found that he suffers severe impairments of hypertension, cardiomegaly, chronic renal insufficiency, and congestive heart failure. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 22-23). In so deciding, the ALJ specifically

considered Listing 4.02 for chronic heart failure. *Id*. However, he determined that plaintiff did not meet or equal this listing because his ejection fraction readings, *during periods of stability*, were not of listing level severity. *Id*. He further noted that Listing 4.02 contemplates chronic heart failure *while on a regimen of prescribed treatment*, yet the record reflected repeated instances of hospitalization because plaintiff failed to take his medication. *See* Tr. 23.

      To establish that a claimant's impairments meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

      Plaintiff contends that the new evidence that he submitted to the Appeals Council supports a finding that he meets the Paragraph B requirements of Listing 4.02. *See* Pl. Brief, pg. 7. However, to meet Listing 4.02, the claimant must satisfy the requirements for paragraphs A *and* B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02. Plaintiff does not point to evidence (new or old) to establish that he suffered from chronic heart failure *while on his regimen of prescribed treatment*. *See* Listing 4.00B3(a) ("If you do not receive treatment, you cannot show an impairment that meets the criteria of most of these listings"). The ALJ found that plaintiff's episodes of exacerbation, i.e. hospitalizations, typically occurred when he was not on his medication. (Tr. 26). This determination is supported by substantial evidence. *See e.g.*, Tr.

182, 200, 232, 241.[3]

In any event, plaintiff does not identify any evidence to establish the paragraph A criteria. For instance, there is no evidence of ejection fraction of 30 percent or less during a period of stability. In fact, plaintiff's cardiologist, Dr. Khalil, noted in a post-decision medical source statement that plaintiff's ejection fraction was 35 percent. (Tr. 236). Also, new evidence consisting of a January 23, 2009, exercise stress test was normal, and resulted in a moderate 20 to 30 percent reduction in functional capacity. (Tr. 270). Plaintiff achieved a workload equivalent of 8.90 METS, whereas the requisite severity for Listing 4.02 contemplates an inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less. *See* Listing 4.02B(3).

In sum, the ALJ's step three determination is supported by substantial evidence, notwithstanding the new evidence that he submitted to the Appeals Council.

## II.     Residual Functional Capacity

The ALJ next determined that Smith retained the residual functional capacity to perform light work reduced by an inability to perform work that requires binocular vision. (Tr. 23).[4] In

---

[3] Of course, a claimant will not be found disabled if he fails, without good reason, to follow prescribed treatment. 20 C.F.R. §§ 404.1530, 416.930. To the extent that it could be argued that the ALJ erred by failing to afford plaintiff an opportunity to address his failure to take his medication consistently, *see* SSR 96-7p, plaintiff has not demonstrated resulting prejudice, where there is no indication in the existing record of any fiscal, mental, religious, or other barrier to treatment. *See* 20 C.F.R. 404.1530. Indeed, at the hearing, plaintiff stated that he took his medication. (Tr. 11). However, not only did the physicians question plaintiff's compliance, there is evidence that plaintiff's failure to follow prescribed treatment was volitional. (Tr. 194, 331).

[4] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it

his residual functional capacity assessment, the ALJ assigned "significant" weight to the findings of the consultative physician, Bruce Torrance, M.D. (Tr. 27).

On April 17, 2008, Dr. Torrance examined Smith at the request of disability determination services. (Tr. 154-158). Smith reported chest pain for the past five to six months which was progressively worsening. *Id*. He also reported worsening shortness of breath and fatigue since he suffered a myocardial infarction in January 2008. *Id*. He reported regular chest pain two to three times per week, described as a tightness located in the center of his chest, without radiation. *Id*. His chest pain lasts about five minutes, and is exacerbated with exertion and exercise. *Id*. His chest pain is relieved by rest and nitroglycerine pills. *Id*. Smith smoked a pack of cigarettes per day for the last 30 years. *Id*. He reported that he could stand for approximately an hour at a time, and for a total of four hours in an eight hour day. *Id*. He can walk on level ground for 30 minutes, and sit for eight hours at a time. *Id*. Smith reported that he could lift approximately five pounds. *Id*. He also stated that he could sweep, shop, mop, vacuum, cook and wash dishes. *Id*. However, he did not climb stairs or mow grass. *Id*.

Upon examination, Smith ambulated without difficulty. *Id*. He had no swelling, redness, or effusion in any joint. *Id*. His gait was normal. *Id*. He exhibited 5/5 grip strength in his bilateral hands. *Id*. He was able to perform fine and gross motor skills, without difficulty. *Id*.

---

requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

His range of motion was normal in all extremities including the cervical and lumbar spines. *Id*. He exhibited 5/5 muscle strength in the upper and lower extremities, bilaterally. *Id*. There was no evidence of any sensory deficits. *Id*. A chest x-ray revealed no focal opacification, mild cardiomegaly, but no evidence of any pleural effusion or opacities. *Id*. An EKG revealed a normal sinus rhythm, with evidence of ventricular hypertrophy, but otherwise no other abnormalities. *Id*. Torrance diagnosed coronary artery disease and congestive heart failure, per history of the patient. *Id*. Smith also suffered from congenital right eye blindness. *Id*. Dr. Torrance concluded that Smith exhibited some limitation in his ability to exert himself, and to carry heavy objects secondary to chest pain; however, he could sit, hear, speak, walk, and see without any difficulty, except for his right eye blindness. *Id*.

Plaintiff contends that new evidence that he submitted to the Appeals Council undermines the ALJ's residual functional capacity assessment. Thus, he concludes that the Appeals Council committed reversible error by not remanding the matter to the ALJ for consideration of the additional evidence.[5] According to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), the Appeals Council is obliged to address additional evidence or legal arguments submitted by a claimant in his request for review. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing HALLEX § I-3-501). In 1995, however, the Executive Director of the Office of Appellate Operations suspended "the requirement for a detailed discussion of additional evidence and for specific responses to contentions in denial notices." *See* HALLEX, § I-3-5-90, http://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-90.html. There is no indication that

---

[5] Here, the Appeals Council issued its rote denial: "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 3-4).

the suspension has been lifted.

Moreover, in the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[6] Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[7]

Here, the new evidence submitted to the Appeals Council spanned the period from January to July 2009, plus a progress note from October 28, 2009. (Tr. 236-354). The evidence reflects hospital stays in April and July 2009, additional records from plaintiff's January 2009 hospitalization, and most on point, two medical source statements completed by plaintiff's treating cardiologist, Mahmoud Khalil on May 19, 2009. *Id*. Because, however, the medical records document post-hearing hospitalizations, there is no indication that they reflect plaintiff's condition as of the hearing date, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463,

---

[6] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II*. The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

[7] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs*. as support for its finding that post-ALJ evidence is to be considered part of the record. *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[8] In fact, Dr. Khalil's medical source statements post-date the ALJ's May 13, 2009, decision.

Even if the "new" evidence that falls between the hearing date and the date of the ALJ's decision pertained to the relevant period, the court is not persuaded that it is otherwise is material, *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).[9] As discussed earlier, a January 2009 stress test was normal, with but moderate functional loss. (Tr. 270). Moreover, by the time plaintiff was released from his January 2009 hospitalization, he was ambulating without shortness of breath. (Tr. 273-276). In addition, the only limitation assigned by the attending physicians was that he should avoid exercising in extreme heat or cold or immediately after eating. *Id*. These limitations are not inconsistent with the demands of plaintiff's past relevant work.[10]

Dr. Khalil's medical source statements represent the most obvious challenge to the ALJ's

---

[8] Fifth Circuit case law suggests that the relevant period for a disability claim extends until the date of the administrative hearing. *Hammond v. Barnhart*, 132 Fed. Appx. (5th Cir. May 17, 2005) (unpubl.); *Haywood*, 888 F.2d at 1472; *Johnson*, 767 F.2d at 183. Medical evidence that post-dates a hearing may be considered, provided that it addresses the severity of the claimant's pre-hearing condition. *Hammond, supra*.

[9] The Fifth Circuit has approved the courts' practice of assigning reasons for discounting the significance of evidence that was submitted to the Appeals Council in the first instance. *See e.g.*, *Higginbotham II, supra*; *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.).

[10] Plaintiff did not indicate that his past relevant work entailed exposure to temperature extremes. *See* Tr. 76-77. Furthermore, according to the Dictionary of Occupational Titles ("DOT"), exposure to extreme heat or cold is not required for the position of Cleaner, Housekeeping. *See* DOT # 323.867-014, 1991 WL 672783.

residual functional capacity assessment. *See* Tr. 236-237.[11] The forms, however, are not consistent with one another. For example, on one form, Dr. Khalil indicated that Smith had anginal pain; whereas on the other form, he omitted that finding. *Id*. Furthermore, Khalil indicated that Smith was unable to perform an exercise tolerance test due to cardiac risk. Of course, Smith, *did* participate in an exercise tolerance test just a few months earlier. *See* discussion, *supra*.[12] Dr. Khalil also left blank spaces which would have indicated that Smith suffered weakness and fatigue due to his cardiac condition, or that he experienced very serious limitations in his ability to independently initiate, sustain, or complete activities of daily living. These omissions tend to conflict with the rather severe exertional limitations assigned by Khalil.

But perhaps the most important reason to discount the efficacy of Dr. Khalil's post-decision medical source statements is that the assigned limitations conflict with plaintiff's own representations regarding his functional capacity during the relevant period. When asked at the December 17, 2008, administrative hearing whether he had any limitation on his ability to stand,

---

[11] On May 19, 2009, Dr. Khalil completed a medical source statement for coronary artery disease indicating that Smith suffered from anginal pain, an inability to perform exercise tolerance test due to cardiac risk; a decreased ejection fraction of 35 percent, a history of myocardial infarction, heart enlargement, and history of congestive heart failure. (Tr. 236). He indicated that plaintiff could not work. *Id*. However, he could stand and sit for 15 minutes at a time; occasionally lift five pounds, but not lift any weight on a frequent basis. *Id*. He also needed to occasionally elevate his legs during an eight hour work day. *Id*.
    Dr. Khalil also completed a medical statement regarding coronary artery disease with "NYHA categories." (Tr. 237). He indicated that Smith was a Class III patient, with marked limitation of activity. *Id*. According to the form, such patients are only comfortable at rest. *Id*.
    On May 19, 2009, Dr. Khalil noted that Smith complained of dyspnea upon exertion – walking one hundred feet. (Tr. 238). He had uncontrolled hypertension. *Id*. By October 2009, however, Smith had no shortness of breath. (Tr. 354). He also was negative for coronary artery disease. *Id*.

[12] If, by May 2009, he was unable to participate in an exercise stress test, then this serves to confirm that Dr. Khalil's assessments reflect a deterioration in Smith's condition after the relevant period.

walk, or sit, Smith stammered, "No. I'm not — no – not –." (Tr. 12).[13] In response to a follow-up question on whether he could run, plaintiff conceded that he did not think that would be a good idea. (Tr. 12-13). Plaintiff explained to the ALJ that his physician had advised him not to lift too much. *Id*. He added, however, that he did not think that lifting five or ten pounds would present a problem. *Id*.[14] Furthermore, despite his recent hospitalization only six days before the hearing, plaintiff stated that he continued to look for janitorial work. (Tr. 12). In fact, as recently as two weeks before the hearing, plaintiff had engaged in "pickup" yard work. (Tr. 11).

Plaintiff further argues that Dr. Torrance's examination findings did not provide substantial evidence for the ALJ's residual functional capacity assessment because they were too vague and indeterminate. Although this court has struggled in the past to discern what another consultative physician, David Hebert, M.D., means when he says that a claimant is able to perform "routine" exertional activities,[15] the court discerns no similar, insurmountable ambiguity with Dr. Torrance's opinion that Smith can sit and walk "without any difficulty" – especially when, as here, plaintiff's self-professed functional abilities were consistent with the ALJ's residual functional capacity assessment.

Accordingly, the court finds that the ALJ's residual functional capacity assessment is

---

[13] Although plaintiff complained of shortness of breath and coughing if he walked too much or became overheated, *see* Tr. 12, his shortness of breath could not have been that limiting, otherwise he would have heeded his doctors' instructions to cease smoking. *See e.g.*, 282-283.

[14] Smith's self-professed ability to lift up to ten pounds overlapped with the low end of the range of heaviest weights that he had to lift to perform his past relevant work. (Tr. 76-77). Plaintiff explained that his prior work required him to wear a tool belt and to lift mops, etcetera, when needed to clean spills. *Id*. Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61) .

[15] *See e.g., Tolliver v. Astrue*, Civil Action Number 11-0039 (W.D. La. Jan. 23, 2012).

supported by substantial evidence.

### III. Step Four

The ALJ concluded at step four of the sequential evaluation process that Smith could return to his past relevant work as a janitor/housekeeper, both as he actually performed the job, and as the job is generally performed in the national economy. (Tr. 28). Other than challenging the ALJ's residual functional capacity assessment, plaintiff does not proffer any arguments specific to the ALJ's step four analysis.

### IV. Waiver of Right to Counsel

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003). Furthermore, a claimant is entitled to receive adequate notice of his right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D. Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)). "Adequate notice" may be established by several written notices, plus oral confirmation by the ALJ that plaintiff wishes to represent himself. *See Castillo, supra*.

Here, plaintiff received numerous written notices advising him of his right to representation. *See* Tr. 37-61. Moreover, on the day of the December 17, 2008, hearing, Smith signed a waiver of representation wherein he stated that he: understood his right to representation at the hearing, voluntarily waived that right, asked to proceed without a representative, and had received a list of organizations that provide legal services prior to the

hearing.  (Tr. 56).

At the hearing itself, the ALJ stated in his opening remarks that plaintiff "appears *pro se* and has agreed to do so." (Tr. 10).  This is the only mention of plaintiff's right to counsel anywhere in the transcript.  There is no indication whether the ALJ spoke with plaintiff concerning his right to counsel prior to going on the record.  While on the record, the ALJ did not ask plaintiff whether he had received the notices in the mail concerning his right to representation.  The ALJ also did not ask plaintiff whether he understood the information contained in those notices regarding representation.  *See* HALLEX I-2-6-52, 1993 WL 643033.

In another similarly postured case, this court was unable to conclude that the claimant had validly waived his right to an attorney at the hearing.  *See Morris v. Astrue*, Civil Action No. 09-1833 (W.D. La. Oct. 29, 2010, R&R).  However, that does not end the inquiry.  When a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted).  The ALJ's failure to develop an adequate record does not automatically compel reversal.  *Id*.  Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that []he was prejudiced as a result of [sic] scanty hearing. [H]e must show that, had the ALJ done his duty, []he could and would have adduced evidence that might have altered the result."  *Kane supra* (internal

Smith, who has been represented by counsel since shortly after the ALJ's decision, contends that had he retained counsel earlier, his attorney could have obtained the medical records that the attorney eventually submitted to the Appeals Council.  However, this court previously concluded that these records either were not new, material, or relevant to the period at

14

issue.  *See* discussion, *supra*.  Insofar as plaintiff relies on the short duration of the hearing (seven minutes) to demonstrate prejudice, the court observes that the brevity of a hearing does not alone establish that the ALJ breached his duty to develop the record.  *See James v. Bowen*, 793 F.2d 702 (5th Cir. 1986) (ten minute hearing not inadequate).  Here, the ALJ elicited testimony from plaintiff and told him that he intended to obtain plaintiff's more recent medical records – which he did.  *See* Tr. 228-235.

In sum, plaintiff has not demonstrated that he was prejudiced by his decision to proceed without counsel at the hearing, or relatedly, as a result of the ALJ's alleged failure to fully and fairly develop the record.

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED, in chambers, at Monroe, Louisiana, this 6th day of July 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE